**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

**MENTOR GRAPHICS CORPORATION**,
an Oregon Corporation,

        Plaintiff/Counter-defendant,

        v.

**EVE-USA, INC.**, a Delaware corporation; and
**SYNOPSYS EMULATION AND
VERIFICATION S.A.,** formed under the laws
of France,

        Defendants/Counter-claimants.

**EVE-USA, INC.**, a Delaware corporation; and
**SYNOPSYS EMULATION AND
VERIFICATION S.A.**, formed under the laws
of France,

        Plaintiffs/Counter-defendants

        v.

**MENTOR GRAPHICS CORPORATION**,
an Oregon corporation,

        Defendant/Counter-claimant.

Case No. 3:10-cv-954-MO (lead)
Case No. 3:12-cv-1500-MO
Case No. 3:13-cv-579-MO

OPINION AND ORDER

1 – OPINION AND ORDER

**MOSMAN, J.**,

In case no. 12-1500, the second of the three consolidated patent actions captioned above, EVE-USA, Inc., and Synopsys Emulation and Verification S.A. (collectively "Synopsys") move [461][1] to amend their answer to Mentor Graphics Corporation's ("Mentor Graphics") complaint. Synopsys seeks to add an affirmative defense and counterclaim accusing Mentor Graphics of inequitable conduct in the prosecution of U.S. Patent No. 6,947,882 ("'882 patent"). Mentor Graphics filed a response in opposition [467], and Synopsys replied [476]. For the reasons set forth below, I DENY the motion.

## BACKGROUND

The patents at issue in the consolidated cases concern methods of simulating an integrated circuit design, allowing a manufacturer to ensure that a circuit will function as intended before committing to the expense of manufacturing it en masse. The '882 patent in particular is directed at emulators, or hardware systems composed of reconfigurable elements onto which a manufacturer can map the logic operations of the design it wishes to test. Within the emulator, as within the circuit ultimately to be manufactured, data signals travel from one logic operation to the next under the metronomic guidance of a clock signal. By watching the operation of the emulated circuit design, the manufacturer can determine the nature and location of any logic errors.

The '882 patent describes methods of combining multiple data signals within one reconfigurable logic device into a single signal for export to another reconfigurable logic device within an emulation system. '882 Patent col.2 l.10–21 (filed Sept. 24, 1999). This "multiplexing" process is timed by a clock signal independent of the clocks that time operation of the individual logic devices. *Id.* Independently clocked multiplexing allows large emulation

---

[1] All docket numbers refer to the lead case, no. 10-954.

systems consisting of many reconfigurable logic devices to be divided into different "time domains," each controlled by a different clock signal. *E.g.*, *id.* at col.7 l.3–9. Committing different regions to the governance of different clock signals eliminates the danger that distributing a single clock signal over what may be a very large emulation system will lead to timing errors. *See id.* at col.1 l.59–col.2 l.7.

## I.    The '882 Patent and the Allegedly Material Prior Art

Synopsys's inequitable conduct allegations center on Mentor Graphics's failure to disclose four prior art references while prosecuting the '882 patent. Three of these references are U.S. Patent Nos. 5,802,348 ("'348 patent") and 6,233,148 ("'148 patent") and U.S. Patent Application No. 09/804,504 ("'504 application"). Because all three references share a common specification and relate back to the '348 patent's filing date, the parties refer to them collectively as the "'348 family." The fourth undisclosed reference is U.S. Patent No. 5,548,794, to which the parties refer by the name of its inventor, Yishay.

The '348 patent family and Yishay also concern multiplexing multiple signals into a single signal, but for transmission to an external device called a logic analyzer, not another reconfigurable logic device within the same emulation system. '348 Patent col.2 l.27– col.3 l.10 (filed Dec. 18, 1995); Yishay col.4 l.48–62 (filed Dec. 5, 1994). Synopsys argues that the '348 patent family and Yishay disclose "independent clocking" within the meaning of the '882 patent. (Mem. in Supp. [462] at 4–6.)

## II.    Mentor Graphics's Prosecution of the '504 Application and '882 Patent

Synopsys alleges that Mentor Graphics acquired IKOS Systems, Inc. ("IKOS"), another emulation company, in March of 2002. (Mot. Ex. A [461-1] at ¶ 47.) An assignment record filed with the Patent and Trademark Office ("PTO") reflects that Mentor Graphics obtained from

IKOS a portfolio of seventeen patents and eight pending applications, including the '348 family. (Ms. Klein's Decl. Ex. 1 [468-1].)

After the acquisition, on December 10, 2002, IKOS delegated the prosecution of the '504 application to Mentor Graphics's outside prosecution counsel, Banner & Witcoff, Ltd. ("Banner & Witcoff"). (Ex. 5 [468-5] at 2–3.) Mentor Graphics's Senior Patent Counsel, Mark Porter, signed the appointment form. *Id.* at 3. On March 21, 2003, Mentor Graphics appointed Banner & Witcoff to prosecute the application that became the '882 patent, also in a form signed by Mr. Porter as Senior Patent Counsel. (Ex. 7 [468-6] at 6–7.) Transmittal forms identify Banner & Witcoff attorney Christopher McKee as having power of attorney. (Ex. 5 [468-5] at 1; Ex. 7 [468-6] at 8.)

On July 8, 2004, the Patent and Trademark Office ("PTO") rejected all claims in the '504 application in a non-final office action. (Ex. 5 [468-5] at 4.) One of the examiner's grounds for the rejection was that claim 23 of the '504 application was obvious in light of Yishay. *Id.* at 16. Mentor Graphics expressly abandoned the '504 application soon afterward. *Id.* at 18.

At some point during prosecution, the PTO rejected the claims in the '882 patent as anticipated by U.S. Patent No. 5,701,441 ("Trimberger"). (Ex. 7 [468-6] at 14.) On July 10, 2003, Banner & Witcoff attorney William Rauchholz argued that the claims in the application were patentable over Trimberger in part because of subsequent amendments. *Id.* at 15–16, 19. The PTO mailed a Notice of Allowance on March 22, 2004. *Id.* at 20. The examiner adopted Mr. Rauchholz's argument, reasoning that, unlike the '882 patent, Trimberger did not describe "clocking that is independent of the first time multiplexed interconnection and wherein the signal routing clock signal is independent of the first and second clock signals." *Id.* at 24–25.

4 – OPINION AND ORDER

Synopsys filed a petition for inter partes review of the '882 patent on September 26, 2012. (Ex. 9 [468-8] at 1, 61.) In part, Synopsys argued that a patent not at issue here had anticipated '882 by disclosing a method of multiplexing signals from multiple outputs using "independent clocks." (Ex. 10 [469-9] at 10.) The Patent Trial and Appeal Board rejected this argument, finding that, though the prior art disclosed the use of independent clock signals generally, it did not require the use of independent clocks to route data signals among multiple reconfigurable logic devices within a single emulation system. *Id.* at 12–13.

## III.    The Present Motion

Synopsys now seeks to amend its answer in Case No. 12-1500 to include an affirmative defense and counterclaim of unenforceability based on inequitable conduct. (Mem. in Supp. [462] at 1.) Synopsys asserts that Mentor Graphics was aware that the '348 family, including the '504 application, taught the same "independent clocking" feature as the '882 patent, yet failed to disclose them during prosecution. *Id.* at 5. It argues also that the rejection of the '504 application in light of Yishay demonstrated that Yishay was material, yet Mentor Graphics did not disclose Yishay in the '882 prosecution either. *Id.* at 6.

The deadline for amending pleadings passed on February 22, 2013. (*See* Order [287] (adopting parties' proposed case schedule); Klein Decl. Ex. 13 [468-10] at 2 (proposed case schedule).)

## DISCUSSION

Regional circuit law supplies the standard governing a party's request for leave to amend a pleading. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009). Where the proposed amendment alleges inequitable conduct, whether the claim "has been pleaded with particularity under Rule 9(b) is a question governed by Federal Circuit law." *Id.*

Where a court-ordered deadline for amending pleadings has passed, a party seeking leave to amend must both demonstrate "good cause" for deviating from the scheduling order under Rule 16(b)(4) and satisfy the requirements for amendment under Rule 15. *Johnson v. Mammoth Recreations, Inc.*, 975 F.3d 604, 607–08 (9th Cir. 1992) (citing *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987)). Whether "good cause" exists for allowing a late request for amendment turns principally on "the diligence of the party seeking the amendment." *Id.* at 609. "If that party was not diligent, the inquiry should end." *Id.*

A patent is unenforceable in its entirety if it was obtained, even if only in part, through inequitable conduct. *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (en banc). A patent applicant engaged in inequitable conduct if she "misrepresented or omitted material information with the specific intent to deceive the PTO." *Id.* A misrepresentation or omission regarding a patent claim is material if, but for the misrepresentation or omission, the PTO would not have allowed the claim. *Id.* at 1291.

## I.    Synopsys's Diligence in Seeking Amendment

Good cause exists to permit untimely amendment if the party seeking it only recently discovered facts that would support an allegation of inequitable conduct. *See Formax Inc. v. Alkar-Rapidpak-MP Equip. Inc.*, No. 11-208, 2013 WL 2368824, at *6 (E.D. Wis. May 29, 2013); *Enzo Life Sci., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 489 (D. Del. 2003). In *Formax*, after the amendment deadline passed, two inventors testified at deposition that they knew that the patent in suit and plaintiff's prior art both disclosed "using tie rods which resist a separation reaction force between the pump cylinder and driving mechanism." 2013 WL 2368824, at *5. This deposition testimony provided defendant for the first time with evidence that the plaintiff had knowingly withheld material prior art. *Id.* at *5–*6. The court allowed the amendment. *Id.*

6 – OPINION AND ORDER

at *6.  Similarly, in *Enzo*, an inventor testified at deposition that the prior art "disclosed as many as five affinities," despite having declared during prosecution that it disclosed only two affinities. 270 F. Supp. 2d at 488.  The defendant moved to amend its answer to allege inequitable conduct within two months of learning of the inventor's misrepresentation.  *Id.* at 486, 488.  The court observed that the defendant was "prudent" to wait until it had the necessary facts before seeking to amend, though the deadline for doing so had passed.  *Id.* at 489.

Synopsys argues that it sought leave to amend immediately after learning from two "critical depositions" that specific agents of Mentor Graphics had withheld material prior art during prosecution of the '882 patent.  (Mem. in Supp. [462] at 10–11.)  According to Synopsys, Mr. Porter's and General Counsel and Vice President Dean Freed's statements at deposition, both taken on December 19, 2013, revealed for the first time that Mr. Porter withheld the '504 application with knowledge of its materiality in order to induce the PTO to issue the '882 patent.

The new information Synopsys purports to have divined from the depositions concerns Mr. Porter's supervisory role in Mentor Graphics's patent prosecutions.  (Mot. Ex. A [461-1] at ¶ 52.)  Mr. Porter testified that he was responsible for reviewing the intellectual property of companies that Mentor Graphics sought to acquire, and therefore "certainly would have reviewed the [IKOS] patents and patent applications."  *Id.* (alteration in original).  Mr. Freed testified that Mr. Porter held "discretion" with regard to whether to disclose the patents and applications acquired from IKOS during Mentor Graphics's patent prosecutions.  *Id.* at ¶ 53.  He also testified that whether to abandon an application was committed to Mr. Porter's discretion. *Id.* at ¶ 69.  Synopsys infers from these general statements regarding Mr. Porter's supervisory powers that (1) he would have known that the '504 application was material to the prosecution of the '882 patent, (2) he decided that the '504 application would not be disclosed, and (3) he chose

7 – OPINION AND ORDER

to abandon the '504 application in order to secure a longer term of protection for the identical "independent clocking" feature of the '882 patent. (Mem. in Supp. [462] at 6, 14–15, 17.) As in *Formax* and *Enzo*, it argues, it did not have the facts it needed to allege inequitable conduct until these depositions established Mr. Porter's role. *Id.* at 12.

Synopsys also argues that it only lately learned that specific Banner & Witcoff attorneys participated in Mentor Graphics's alleged inequitable conduct. It asserts that a privilege log disclosed by Banner & Witcoff in December of 2013 reveals that Mr. McKee oversaw prosecution of the '504 application and '882 patent. *Id.* at 6. Its answer also alleges inequitable conduct against Mr. Rauchholz, but Synopsys does not attempt to argue that it could not have learned of his role before the amendment deadline. *See id.* at 14–15.

Mentor Graphics argues in response that the depositions and privilege log taught Synopsys nothing that it could not have learned from previous discovery and publicly disclosed information. (Opp'n [467] at 11–13.) It notes that the prosecution histories of the '504 application and the '882 patent make the roles of Mr. Porter and Mr. McKee obvious. *Id.* at 11. For example, Mr. Porter's signature on the power of attorney forms assigning prosecution to Banner & Witcoff, above a line describing him as Senior Patent Counsel, should have alerted Synopsys to his supervisory role. *Id.* Further, Mentor Graphics argues that Banner & Witcoff's privilege log reveals only that Mr. McKee oversaw all of Mentor Graphics's patent prosecutions, not merely the '882 patent. *Id.* at 13. This Synopsys could have learned from the publicly available power of attorney forms. *Id.* Unlike in *Formax* and *Enzo*, Mentor Graphics argues, Synopsys learned nothing specific during recent discovery that would suggest that any particular person withheld material information. *Id.* at 12–13.

8 – OPINION AND ORDER

I have reservations as to whether Synopsys has diligently pursued the facts necessary to allege inequitable conduct. Certainly the lately discovered evidence is not as powerful as in *Formax* and *Enzo*, where the patents' inventors all but admitted to deliberate misrepresentations or omissions. Instead, at most, the December 2013 depositions taught Synopsys that Mr. Porter reviewed the IP holdings Mentor Graphics acquired from IKOS and had the discretion to direct abandonment of applications. I doubt whether such broad facts concerning Mr. Porter's supervisory powers justify bringing a claim of inequitable conduct more than a year after the amendment deadline has passed. I decline to resolve the issue, however, because I find that amendment would be futile.

## II. Futility of Amendment

Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be freely granted absent such factors as "undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies . . . , undue prejudice to the opposing party . . . , [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Synopsys argues that it does not seek amendment for an improper purpose and that amendment would not cause undue delay or prejudice. (Mem. in Supp. [462] at 12–13.) Mentor Graphics does not dispute these contentions. Nor does either party assert that Synopsys has failed to cure deficiencies in prior proposed amendments. Whether to grant leave to amend therefore turns on whether amendment would be futile.

Amendment is futile if the amended pleading fails to state a claim on which relief may be granted. *E.g.*, *Vaughan v. California*, No. 10-1179, 2013 WL 4517294, at *1 (S.D. Cal. Aug. 23, 2013). The facts on which a claim of inequitable conduct is predicated must be pleaded with particularity in accordance with Rule 9(b). *Exergen*, 575 F.3d at 1326. This requires that the pleading set forth "the specific who, what, when, where, and how of the material

misrepresentation or omission." *Id.* at 1328.  The facts alleged must give rise to the inferences

that "a specific individual (1) knew of the withheld information or of the falsity of the material

misrepresentation, and (2) withheld or misrepresented this information with a specific intent to

deceive the PTO." *Id.* at 1328–29.

Here, the allegations in Synopsys's proposed amended answer fail to support an inference

either that (1) the '348 family and Yishay are material to any claim in the '882 patent or that (2)

any specific person intended to deceive the PTO.

## A.    *Materiality*

A claim of inequitable conduct must explain why "the withheld information is material

and not cumulative" and how "an examiner would have used this information in assessing the

patentability of the claims." *Exergen*, 575 F.3d at 1329–30.  Since *Therasense*, withheld

information is material only if its nondisclosure was a "but for" cause of the PTO's allowance of

the claims.  649 F.3d at 1291–92.

Synopsys argues that the amended answer explains how the '348 family and Yishay are

material to the '882 patent application.  (Mem. in Supp. [462] at 16.)  The answer alleges that the

'348 family discloses the same "independent clocking" limitation as the '882 patent.  (Mot. Ex.

A [461-1] at ¶¶ 60–61.)  For that reason, it asserts, the patent examiner would have determined

that the '348 family anticipates the '882 patent if proper disclosure had been made, and the '882

patent would not have issued.  *Id.* at ¶ 62.  Synopsys does not present any specific reason why

Yishay is material.  To the contrary, I do not believe that the broad concept of independent

clocking was material to the examiner's decision to allow the claims in the '882 patent.  To

explain why, I must briefly describe the inventions disclosed in the '348 family and Yishay.

The '348 patent family is directed generally to methods of exposing the internal logic

operations of a circuit design under test to an external, commercially available "logic analyzer."

'348 Patent col.2 l.27–60.  A complex logic circuit will have a vast number of individual logic

components, each performing a different operation.  *Id.*  The circuit itself will have relatively few

outputs, however, leaving its internal operations mostly invisible to external devices.  *Id.*  The

'348 family addresses this problem by incorporating a multiplexing device into the design under

test.  *Id.* col.3 l.1–10.  The multiplexing process is timed by a clock signal independent of the

clock that governs the design under test itself.  *Id.*  Similarly, Yishay teaches the use of a

"multiplexed bus" to export data from a design under test to a logic analyzer.  Yishay col.4 l.48–

62.  Synopsys asserts that the '348 patent's use of independent clock signals to control operation

of the design under test and to multiplex data signals for export to a logic analyzer is the same

"independent clocking" as the '882 patent teaches.  (Mot. Ex. 1 [461-1] at ¶ 60.)  Again, it does

not attempt to explain how Yishay is material.

I do not believe that these references' reliance on the broad concept of independent

clocking would have troubled the patent examiner.  Both in issuing the '882 patent over

Trimberger and in denying Synopsys's petition for inter partes review, the examiner found that

the '882 patent's use of independent clock signals to multiplex and route data signals *within a*

*single emulation device* set the '882 patent apart from prior art.  (Ms. Klein's Decl. Ex. 7 [468-6]

at 24–25; Ex. 10 [468-9] at 12–13.)  Indeed, in its decision not to institute inter partes review, the

examiner found that the '882 patent was not anticipated by prior art that also described the use of

independent clock signals.  (Ex. 10 [468-9] at 12–13.)  The '348 patent and Yishay, to the extent

that they describe independent clocking at all, teach its use in order to route signals from within

an emulator to an external device.  Neither anticipates the specific use of independent clocking

11 – OPINION AND ORDER

that the examiner found to distinguish the '882 patent over other prior art.  Because neither

reference teaches the use of independent clocking to route signals among reconfigurable logic

devices in a single emulation system, neither is material to the '882 patent.[2]

### B.        *Specific Intent To Deceive the PTO*

The parties disagree initially concerning whether the Federal Circuit's recent en banc

decision in *Therasense* heightened the standard for judging the sufficiency of an allegation of

intent to deceive.  I do not understand the *Therasense* opinion to disturb the pleading standard.

Under the applicable standard, I conclude that Synopsys's proposed amended answer does not

allege sufficient facts to permit a plausible inference that any specific person intended to deceive

the PTO.

### 1.        Pleading Standard

In *Exergen*, the Federal Circuit set forth the standard for pleading intent to deceive as

follows:

> [A] pleading of inequitable conduct under Rule 9(b) must include sufficient
> allegations of underlying facts from which a court may reasonably infer that a
> specific individual (1) knew of the withheld material information or of the falsity
> of the material misrepresentation, and (2) withheld or misrepresented this
> information with a specific intent to deceive the PTO.

575 F.3d at 1328–29.  The court defined "reasonable inference" as "one that is plausible and that

flows logically from the facts alleged, including any objective indications of candor and good

---

[2] Synopsys asserts that the '348 family and Yishay are not properly considered in determining whether its proposed amendment is futile because the court is bound to accept its factual allegations as true. (Reply [476] at 2–3.) To the contrary, its proposed amended answer incorporates both by reference.  A document not attached to a pleading "may be incorporated by reference . . . if the [pleader] refers extensively to the document or the document forms the basis of the [pleader's] claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Synopsys's proposed amended answer refers to the '348 family in general or the '504 application in particular in no less than fourteen paragraphs. (Mot. Ex. A [461-1] at ¶¶ 41, 58–63, 65–70, 73.)  This amounts to extensive reference.  Yishay appears in only two paragraphs, *id.* at ¶¶ 61, 73, but the proposed amended answer makes clear that Synopsys's inequitable conduct charge centers on the nondisclosure of Yishay as well as of the '348 family.  Both therefore "form[] the basis" of Synopsys's claim.  Because the proposed amended answer incorporates them by reference, I may consider the content of the '348 family and Yishay in determining whether amendment would be futile.

faith." *Id.* at 1329 n.5.  Two years later, sitting en banc, the court reiterated that a district court

may find that the defendant intended to deceive the PTO only if that conclusion is "'the single

most reasonable inference able to be drawn from the evidence.'"  *Therasense*, 649 F.3d at 1290–

91 (quoting *Star Sci., Inc. v. R.J. Reynolds Tobaco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)).

The court did not address whether this heightened standard of proof of intent to deceive affected

the pleading standard announced in *Exergen*.  Months after the *Therasense* opinion issued, a

three-judge panel of the Federal Circuit again cited *Exergen* for the standard to apply at the

pleading stage.  *See Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed.

Cir. 2011) (holding that an inequitable conduct claimant must allege facts allowing the court to

"reasonably infer" that a specific person intended to deceive the PTO).

Synopsys points out two district courts that have continued to apply *Exergen* at the

pleading stage, among them the District of Oregon.  *See Cyber Acoustics, LLC v. Belkin Int'l,*

*Inc.*, --- F. Supp. 2d ---, No. 13-1144, 2013 WL 6842755, at \*4 (D. Or. Dec. 27, 2013) (quoting

the *Exergen* standard); *Wyeth Holdings Corp. v. Sandoz, Inc.*, No. 09-955, 2012 WL 600715, at

\*7–8 (D. Del. Feb. 3, 2012) (determining that *Therasense* did not affect the *Exergen* pleading

standard), *adopted by* 2012 WL 749378.  Mentor Graphics, on the other hand, cites three district

courts for the proposition that, in light of *Therasense*, a claim of inequitable conduct must allege

facts from which the "single most reasonable inference" is intent to deceive.  *See VDF*

*FutureCeuticals, Inc. v. Sandwich Isles Trading Co., Inc.*, No. 11-288, 2011 WL 6820122, at \*6

(D. Haw. Dec. 27, 2011) (concluding that *Therasense* "tightened" the pleading standard);

*Hansen Mfg. Corp. v. Enduro Sys., Inc.*, No. 11-4030, 2011 WL 5526627, at \*4 (D.S.D. Nov. 14,

2011) (same); *Quest Software, Inc. v. Centrify Corp.*, No. 10-859, 2011 WL 5508820, at \*2–3

(D. Utah Nov. 9, 2011) (applying the *Therasense* standard in a motion to dismiss).

I read *Therasense* as setting forth the standard of proof at trial, not the standard for weighing the sufficiency of the factual allegations in the pleading.  Three months elapsed between the Federal Circuit's opinions in *Therasense* and *Delano Farms*.  The *Delano Farms* panel therefore had plenty of time to determine whether the en banc court's opinion in *Therasense* required any revision of the pleading standard.  The court's restatement of the *Exergen* standard demonstrates that it judged no revision to be necessary.  I will therefore apply *Exergen*'s "reasonable inference" standard to the facts Synopsys alleges in support of its assertion that specific persons at Mentor Graphics intended to deceive the PTO.

### 2.    Sufficiency of the Allegations

A court "cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material information contained in that reference."  *Exergen*, 575 F.3d at 1330 (emphasis omitted).  A pleading that alleges only that a patentee was aware of a prior art reference therefore does not support a reasonable inference that the patentee knew that any specific information within the reference was material to its patent application.  *See id.*

Synopsys argues that its proposed amended answer permits a court reasonably to infer that Mr. Porter and the "attorneys at Banner & Witcoff" intended to deceive the PTO by withholding Yishay and the '348 family.  (Mem. in Supp. [462] at 17.)  It asserts that these actors' roles in prosecuting the '504 application and the '882 patent support an inference that they knew that the '348 family and Yishay disclosed "independent clocking."  *Id.* (citing Mot. Ex. A [461-1] at ¶¶ 63–66.)  It argues in turn that this inference of knowledge of the '348 family and Yishay's materiality supports an inference that Mr. Porter and Banner & Witcoff intentionally withheld the prior references from the Patent Office.  *Id.* (citing Mot. Ex. A [461-1] at ¶¶ 67–70).  Finally, it argues that Mr. Porter's power to direct abandonment of applications

suggests that he decided to abandon the '504 application in this case in order to favor the later priority date of the '882 patent.  *Id.* (citing Mot. Ex. A [461-1] at ¶¶ 69–70.)

Squeeze as it might, Synopsys has extracted no blood from this turnip.  That Mr. Porter supervised prosecution of the '504 application supports an inference only that he was generally aware of its existence.  Under *Exergen*, that fact is insufficient to allow a court to infer that Mr. Porter knew of any particular material information contained within the application.  The same reasoning applies to Mr. McKee and the other attorneys at Banner & Witcoff.  Because Mr. Porter's supervisory role at most permits an inference that he was generally aware of the '504 application, his decision to direct its abandonment also may not reasonably be assigned any nefarious meaning.

Synopsys's proposed amended answer offers one final allegation in support of Mentor Graphics's alleged intent to deceive the PTO in prosecuting the '882 patent.  The answer observes that the Northern District of California found Mentor Graphics to have engaged in inequitable conduct in a previous action.  (Mot. Ex. A [461-1] at ¶ 71 (citing *Mentor Graphics Corp. v. Quickturn Design Sys.*, No. 00-1030 (lead case), 2003 U.S. Dist. LEXIS 16197, at *12, *20 (N.D. Cal. July 30, 2003)).)  It also alleges that Mentor Graphics failed to alter its policies "in order to avoid similar instances of inequitable conduct in the future."  *Id.* at ¶ 72.

That Mentor Graphics was found to have acted inequitably in prosecuting an unrelated set of patents has no bearing on whether it did so in this case.  Synopsys has offered no evidence suggesting that the *Quickturn* case bears any "close relation" to the prosecution of the '882 patent, as would be required to consider it as evidence of intent under Rule 404(b) of the Federal Rules of Evidence.  *See McNeil-PPC, Inc. v. Perrigo Co.*, 516 F. Supp. 2d 238, 258 n.9 (S.D.N.Y. 2007).  Further, its allegation that Mentor Graphics failed to implement any policy

changes after the *Quickturn* inequitable conduct finding does not support the inference that, on this specific occasion, some specific person knew of specific material information within the '504 application or any other undisclosed reference.

Synopsys's proposed amended answer fails to allege any facts from which a court may reasonably infer that Mr. Porter, the attorneys at Banner & Witcoff, or any other agent of Mentor Graphics knew of any specific information within the '348 family or Yishay.  The proposed amendment therefore does not support an inference of specific intent to deceive.

### CONCLUSION

Even if Synopsys diligently pursued the facts it needed in support of its affirmative defense and counterclaim of inequitable conduct, the proposed amendment is futile for two independent reasons: the undisclosed references are not material to the claims in the '882 patent, and the facts alleged do not support a reasonable inference of intent to deceive.  Synopsys's Motion [461] for Leave To File an Amended Answer and Counterclaim is therefore DENIED.

IT IS SO ORDERED.

DATED this ___9th___ day of April, 2014.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

16 – OPINION AND ORDER