JAMES E. GERINGER (OSB No. 951783) – james.geringer@klarquist.com
PATRICK M. BIBLE (OSB No. 020323) – patrick.bible@klarquist.com
MARK W. WILSON (OSB No. 091596) – mark.wilson@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204
Telephone: (503) 595-5300

GEORGE A. RILEY (*pro hac vice*) – griley@omm.com
MARK E. MILLER (*pro hac vice*) – markmiller@omm.com
GEOFFREY H. YOST (*pro hac vice*) – gyost@omm.com
MICHAEL SAPOZNIKOW (*pro hac vice*) – msapoznikow@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111
Telephone: (415) 984-8700

Attorneys for
MENTOR GRAPHICS CORPORATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **MENTOR GRAPHICS CORPORATION**, an Oregon corporation,<br><br>    **Plaintiff and Counter-Defendant**,<br><br>    v.<br><br>**EVE-USA, INC.**, a Delaware corporation, and **SYNOPSYS EMULATION AND VERIFICATION S.A.**, formed under the laws of France,<br><br>    **Defendants and Counter-Plaintiffs**. | Civil Action No. 3:10-CV-954-MO (LEAD)<br>Civil Action No. 3:12-CV-1500-MO<br>Civil Action No. 3:13-CV-579-MO<br><br>**MENTOR GRAPHICS' PROPOSED REVISIONS TO THE COURT'S DRAFT FINAL JURY INSTRUCTIONS** |
| **SYNOPSYS, INC.,** a Delaware corporation**, EVE-USA, INC.,** a Delaware corporation**,** and **SYNOPSYS EMULATION AND VERIFICATION S.A.,** formed under the laws of France,<br><br>    **Plaintiffs and Counter-Defendants**,<br><br>    v.<br><br>**MENTOR GRAPHICS CORPORATION,** an Oregon corporation,<br><br>    **Defendant and Counter-Plaintiff**. | |

**Instruction No. 7**

**Summary of Contentions**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, Mentor Graphics contends that Synopsys infringes the '376 patent. The asserted claims of the '376 patent are: 1, 24, 26, 27, and 28.  Mentor Graphics also argues that Synopsys has actively induced infringement of these claims of the '376 patent by others, and contributed to infringement of these claims of the '376 patent by others.

The validity and enforceability of the '376 patent is not at issue in this trial.  For purposes of this trial, the '376 patent is valid and enforceable.

Synopsys denies that it has infringed the asserted claims of the '376 patent and denies that it has induced or contributed to any infringement of the '376 patent.  Synopsys contends that its accused ZeBu emulation systems do not infringe the '376 patent because neither Synopsys nor its customers perform every step of claims 1, 24, 26, and 27 of the '376 patent and its accused ZeBu emulation systems do not meet all the elements of claim 28 of the '376 patent.

Your job is to decide whether Synopsys has infringed the asserted claims of the '376 patent.  If you decide that any claim of the '376 patent has been infringed, you will then need to decide any money damages to be awarded to Mentor Graphics to compensate it for the infringement.

**Instruction No. 13**

**Direct Infringement**

In order to prove direct infringement of method claims 1, 24, 26, and 27, Mentor Graphics must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Synopsys performed every step of the asserted claim and did so without the permission of Mentor Graphics after October 4, 2012.

In order to prove direct infringement of claim 28, Mentor Graphics must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Synopsys made, used, sold, offered for sale within, or imported into the United States a product that meets all the limitations of claim 28.

**Mentor Graphics must prove by a preponderance of the evidence that the methods in claims 1, 24, 26, and 27 are performed with a ZeBu emulation system using flexible probes or value change probes.[1]  Mentor Graphics must prove by a preponderance of the evidence that the apparatus of claim 28 is a ZeBu emulation system having software for incorporating flexible probes or value change probes.**

**The asserted patent claims use the term "comprising," meaning that they are "open claims."  An open claim is infringed if every limitation of the claim is met, regardless of whether additional features are present in the infringing method or apparatus.  For example, in an open method claim that recites steps 1, 2, and 3, a method that includes steps 1, 2, 3, and additional step 4 infringes.  And in an open apparatus claim that recites elements A, B, and C, an apparatus incorporating elements A, B, C, and additional featrue D infringes.  It is, thus, irrelevant to the infringement analysis whether the ZeBu emulation systems perform additional steps or contain additional elements beyond those recited in the asserted patent claims.**

You must determine, separately for each asserted claim, whether or not there is infringement.  There is one exception to this rule.  If you find that a claim on which other claims depend is not infringed, there cannot be infringement of any dependent claim that refers directly or indirectly to that independent claim.  On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the additional requirements of any claims that depend from the independent claim are met, thus, whether those claims have also been infringed.

---

[1] Bold text indicates language added to the Court's proposed jury instructions or a model jury instruction.

**Instruction No. 17**

**Lost Profits—"But For" Test**

In this case, Mentor Graphics seeks to recover lost profits for some of Synopsys' sales of Synopsys' emulation systems and a reasonable royalty on the rest of Synopsys' sales.

To recover lost profits (as opposed to reasonable royalties), Mentor Graphics must show a causal relationship between the infringement and Mentor Graphics' loss of profit. In other words, Mentor Graphics must show that, but for the infringement by Synopsys, there is a reasonable probability that Mentor Graphics would have earned higher profits. To show this, Mentor Graphics must prove that, if there had been no infringement, it would have made some portion of the sales that Synopsys made of the infringing product.

**Synopsys' Sales to Intel**

Mentor Graphics is entitled to recover lost profits on Synopsys' sales to Intel of its ZeBu emulation systems if it establishes each of the following:

   (1)   The Intel market contained only two suppliers, Mentor Graphics and Synopsys, during the damages period.

   (2)   That Mentor Graphics had the manufacturing and marketing capacity to make any infringing sales actually made by Synopsys and for which Mentor Graphics seeks an award of lost profits—in other words, that Mentor Graphics was capable of satisfying the demand. (*See* Instruction No. 20.)

   (3)   The amount of profit that Mentor Graphics would have made if Synopsys had not infringed. (*See* Instruction No. 21.)

If Mentor Graphics meets all of the above requirements, the burden shifts to Synopsys to show that Mentor Graphics reasonably would not have made some or all of the diverted sales "but for" the infringement. Synopsys may do so by showing, for example, any of the following:

   (1)   That the Cadence emulation system was an acceptable, available, non-infringing alternative to Mentor Graphics' emulation system and Synopsys' infringing emulation system at Intel. (*See* Instructions Nos. 19[2] and 19A[3].)

---

[2] Mentor Graphics proposes revisions to Instruction No. 19 for clarity and to more closely track the Federal Circuit Bar Association Model Patent Jury Instruction No. 6.2.

[3] Mentor Graphics proposes new instruction 19A to address Synopsys' concerns regarding the alleged availability of a ZeBu emulation system that did not have flexible or value change probes. The new instruction 19A is identical to the relevant portion of Federal Circuit Bar Association Model Patent Jury Instruction No. 6.2. (Available at http://www.fedcirbar.org/olc/filelib/LVFC/cpages/9008/Library/FCBA%20Model%20Patent%20Jury%20Instructions%20(UPDATED%20Feb2013).pdf) (last visited on October 3, 2014).

  (2) That an FPGA prototype was an acceptable, available, non-infringing alternative to Mentor Graphics' emulation system and Synopsys' infringing emulation system at Intel.

  (3) That a software simulator was an acceptable, available, non-infringing alternative to Mentor Graphics' emulation system and Synopsys' infringing emulation system at Intel.

  (4) That Synopsys could have made available during the damages period an acceptable, non-infringing alternative to Mentor Graphics' emulation system and Synopsys' infringing emulation system.

  (5) That Intel would have bought fewer emulation systems than it bought from Synopsys.

If Synopsys is able to show any of the above, you may reduce the amount of lost profits awarded to Mentor Graphics accordingly. For example, if you determine that, without the ZeBu emulation system in the market, Intel would have bought some Cadence emulation systems, instead of buying only Mentor Graphics emulation systems, you should only award Mentor Graphics lost profits for the sales made by Synopsys that you believe Mentor Graphics would actually have made to Intel. Or if you determine that, without the ZeBu emulation system in the market, Intel would have bought fewer or no Mentor Graphics emulation systems, you should only award Mentor Graphics lost profits for the sales made by Synopsys that you believe Mentor Graphics would actually have made to Intel.

**Synopsys' Sales to Non-Intel Customers**

Mentor Graphics is entitled to recover lost profits on Synopsys' sales to non-Intel customers of its ZeBu emulation systems if it establishes each of the following:

  (1) That there was a demand for the patented product. (*See* Instruction No. 18.)

  (2) Mentor Graphics' share of the non-Intel market. (*See* Instructions Nos. 22.)

  (3) That Mentor Graphics had the manufacturing and marketing capacity to make any infringing sales actually made by Synopsys and for which Mentor Graphics seeks an award of lost profits—in other words, that Mentor Graphics was capable of satisfying the demand. (*See* Instruction No. 20.)

  (4) The amount of profit that Mentor Graphics would have made if Synopsys had not infringed. (*See* Instruction No. 21.)

If Mentor Graphics meets all of the above requirements, the burden shifts to Synopsys to show that Mentor Graphics reasonably would not have made some or all of the diverted sales "but for" the infringement. Synopsys may do so by showing, for example, any of the following:

> (1) That Synopsys could have made available during the damages period an acceptable, non-infringing alternative to Mentor Graphics' emulation system and Synopsys' infringing emulation system.
>
> (2) That non-Intel customers would have bought fewer emulation systems than they bought from Synopsys.

If Synopsys is able to show any of the above, you may reduce the amount of lost profits awarded to Mentor Graphics accordingly. For example, if you determine that, without the ZeBu emulation system in the market, non-Intel customers would have bought fewer emulation systems, you should only award Mentor Graphics lost profits for the sales made by Synopsys that you believe Mentor Graphics would actually have made to non-Intel customers.

### **Mentor Graphics' Argument in Support**

This Court held during the September 26, 2014 Pretrial Conference that "if Mentor Graphics is successful proving 'but for' causation, then I do not believe and therefore find that Mentor Graphics is not obligated to show apportionment or practice in the patent with its own devices." (9/26/14 Pretrial Conference Tr. at 5:20-23 (emphasis added); *see also Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc) ("To recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the infringement, it would have made the sales that were made by the infringer."). The Federal Circuit in *Rite-Hite* made clear that "[a] showing under *Panduit* permits a court to reasonably infer that the lost profits claimed were in fact caused by the infringing sales, thus establishing a patentee's prima facie case with respect to 'but for' causation." *Id.* at 1545 (emphasis added). The Court explained:

> A patentee need not negate every possibility that the purchaser might not have purchased a product other than its own, absent the infringement. The patentee need only show that there was a reasonable probability that the sales would have been made "but for" the infringement. When the patentee establishes the reasonableness of this inference, *e.g.*, by satisfying the *Panduit* test, it has sustained the burden of proving entitlement to lost profits due to the infringing sales. **The burden then shifts to the infringer** to show that the inference is unreasonable for some or all of the lost sales.

*Id.* (emphasis added) (citations omitted). The four *Panduit* factors that Mentor Graphics must meet to establish its prima facie case with respect to "but for" causation are "(1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit it would have made." *Id.* (*citing Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978)).

In *Micro Chemical, Inc. v. Lextron, Inc.*, the Federal Circuit held that, where there are only two suppliers in a market, "the first two Panduit factors [collapse] into one 'two suppliers in the relevant market' factor." 318 F.3d 1119, 1124 (Fed. Cir. 2003). The Court explained:

> In the two-supplier market, it is reasonable to assume, provided the patent owner has the manufacturing and marketing capabilities, that it would have made the

> infringer's sales. In these instances, the *Panduit* test is usually straightforward and dispositive.
>
> Thus, under the two-supplier test, a patentee must show: 1) the relevant market contains only two suppliers, 2) its own manufacturing and marketing capability to make the sales that were diverted to the infringer, and 3) the amount of profit it would have made from these diverted sales.

*Id.* The Court the explained that once "the patentee shows two suppliers in the relevant market, capability to make the diverted sales, and its profit margin," it has "erect[ed] a presumption of 'but for' causation" and "the burden of going forward then shifts to the infringer." *Id.* at 1125. The Court explained:

> The infringer may rebut the presumption by showing that the patentee reasonably would not have made some or all of the diverted sales "but for" the infringement. For example, the infringer may rebut the presumption by showing that it sold another available, noninfringing substitute in the relevant market. This situation would arise only where there are two suppliers in the market, but the infringing supplier had two available alternatives: one infringing and the other noninfringing. In that situation, even absent the infringement, customers may have selected the infringer's available, noninfringing alternative over the patented invention.

*Id.*

The above instruction reflects the rulings of this Court, and the *Panduit* test and burden shifting analysis required by the Federal Circuit.

The variation to the second *Panduit* factor that is listed as factor "(2)" for "Synopsys' Sale to Non-Intel Customers" is supported by the Federal Circuit's opinion in *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989). In *Mor-Flo*, the Federal Circuit held that, if the patentee demonstrates its market share, "the presence or absence of acceptable noninfringing alternatives does not matter." 883 F.2d 1573, 1578 (Fed. Cir. 1989). If the patentee can meet the other three Panduit factors, the patentee is entitled to "damages … based on [patentee's] share of the market." *Id.* at 1580. Despite challenging virtually every other aspect of Dr. Degnan's damages analysis, Synopsys has never challenged his application of the *Mor-Flo* rule.

**Instruction No. 19**

**Lost Profits—Non-Infringing Substitutes—Acceptability**

To be an "acceptable substitute," a product must have the advantages of the patented invention that were important to Intel. If Intel was motivated to buy Synopsys' infringing emulation system because of features and characteristics available only from Synopsys' infringing emulation system and Mentor Graphics' emulation system, then some other, alternative product is not an acceptable substitute, even if it otherwise competed with Synopsys' infringing emulation system and Mentor Graphics' emulation system. On the other hand, if the realities of the marketplace are that competitors other than Mentor Graphics would likely have captured the sales made by Synopsys, despite a difference in the products, then Mentor Graphics is not entitled to lost profits on those sales.

## Instruction No. 19A

### Lost Profits—Non-Infringing Substitutes—Availability

An alternative product may be considered "available" as a potential substitute even if the product was not actually on sale during the infringement period. Factors suggesting the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available at the time of infringement. Factors suggesting the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether Synopsys had to design or invent around the patented technology to develop an alleged substitute.

## Instruction No. 23

## Lost Profits—Collateral Sales

In this case, Mentor Graphics is seeking lost profits from sales of service agreements, which Mentor Graphics contends it would have sold along with its Veloce emulation systems that compete with Synopsys' ZeBu emulation systems. The service agreements sold along with Mentor Graphics' Veloce emulation systems are called "collateral products."

To recover lost profits on sales of such collateral products, Mentor Graphics must establish that it is more likely than not that Mentor Graphics would have sold the collateral products but for the infringement.

Recovery for lost profits on sales of collateral products must not include items that essentially have no relationship to the competitive product and that have been sold with the competitive product only as a matter of convenience or business advantage.

## Instruction No. 6A[4]

### Deposition Testimony of a 30(b)(6) Designee

Certain witnesses presented during this trial have been referred to by counsel as "30(b)(6) witnesses" or "30(b)(6) designees." In litigation, a party may request the deposition of a corporation or other organization by serving the corporation or organization with a deposition notice or subpoena, describing with reasonable particularity the matters on which the corporation or organization will be examined. The corporation or organization must then designate one or more officers, directors, managing agents, or other persons to testify on its behalf. These persons are referred to as "30(b)(6) witnesses" or "30(b)(6) designees." A 30(b)(6) witness must testify during his deposition about information known or reasonably available to the corporation or organization regarding the matters on which he was designated to testify.

The testimony of a 30(b)(6) witness regarding the matters on which he was designated to testify constitutes the testimony of the corporation or organization. You should give this testimony the same weight that you would give other testimony presented at trial. This testimony may be contradicted by other testimony or evidence presented at trial and you must decide which testimony or evidence is accurate.

---

[4] Mentor Graphics proposes new instruction 6A regarding 30(b)(6) deposition testimony. This instruction is supported by the arguments and authority included in Mentor Graphics' Bench Memorandum Regarding the Use Of 30(b)(6) Deposition Testimony at Trial. (Dkt. No. 702.)

## Instruction No. 6B[5]

## Credibility of Witnesses

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

    (1)    the opportunity and ability of the witness to see or hear or know the things testified to;

    (2)    the witness's memory;

    (3)    the witness's manner while testifying;

    (4)    the witness's interest in the outcome of the case and any bias or prejudice;

    (5)    whether other evidence contradicted the witness's testimony;

    (6)    the reasonableness of the witness's testimony in light of all the evidence; and

    (7)    any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

---

[5] Mentor Graphics proposes new instruction 6B regarding the credibility of witnesses. This proposed instruction is identical to Ninth Circuit Model Jury Instruction No. 1.11. (Available at http://www3.ce9.uscourts.gov/jury-instructions/node/55) (last visited on October 5, 2014).

## Instruction No. 6C[6]

### Privileged Information

A party does not need to disclose privileged information. Privileged information includes, for example, (1) confidential communications between a client and her attorney, and (2) work product created by an attorney in anticipation of litigation.

A party may not, however, rely on privileged information to show a good-faith belief in non-infringement or invalidity of a patent. If a party asserts that it relied on the advice or investigation of its attorneys (including attorneys within a corporation) to form its belief that a patent is invalid or not infringed, that party waives its privilege and must disclose its attorney's opinion, advice, investigation, and all other information relating to the subject of the investigation. In this case, Synopsys has claimed privilege and has not disclosed any attorney opinion, advice, or investigation of non-infringement or invalidity of the '376 Patent. Synopsys cannot, therefore, rely on such privileged information to support any non-infringement argument in this trial.

---

[6] Mentor Graphics proposes new instruction 6C regarding attorney-client privileged information.

Dated: October 5, 2014

By    */s/ Mark E. Miller*
JAMES E. GERINGER
PATRICK M. BIBLE
MARK W. WILSON
KLARQUIST SPARKMAN LLP

GEORGE A. RILEY
MARK E. MILLER
GEOFF H. YOST
MICHAEL SAPOZNIKOW
O'MELVENY & MYERS LLP

Attorneys for
MENTOR GRAPHICS CORPORATION