**Stephen F. English**, OSB No. 730843
SEnglish@perkinscoie.com
**Julia E. Markley**, OSB No. 000791
JMarkley@perkinscoie.com
**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209
Telephone: 503.727.2000

**I. Neel Chatterjee** (*pro hac vice*)
nchatterjee@orrick.com
**William H. Wright** (*pro hac vice*)
wwright@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 Marsh Road
Menlo Park, CA 94025
Telephone: 650.614.7400

Attorneys For Defendants and Counter-Claimants/Plaintiffs Synopsys, Inc.; Synopsys Emulation and Verification S.A.; and EVE-USA, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

**MENTOR GRAPHICS CORPORATION**, an Oregon corporation,
Plaintiff and Counter-Defendant,
v.
**EVE-USA, INC.**, a Delaware corporation, and **SYNOPSYS EMULATION AND VERIFICATION S.A.,** formed under the laws of France,
Defendants and Counter-Claimants.

**SYNOPSYS, INC.,** a Delaware corporation, **EVE-USA, INC.,** a Delaware corporation, and **SYNOPSYS EMULATION AND VERIFICATION S.A.,** formed under the laws of France,
Plaintiffs and Counter-Defendants,
v.
**MENTOR GRAPHICS CORPORATION**, an Oregon corporation.
Defendant and Counter-Claimant.

Case No. 3:10-cv-00954-MO (Lead)
Case No. 3:12-cv-01500-MO
Case No. 3:13-cv-00579-MO

**SYNOPSYS' MEMORANDUM REGARDING LOST PROFITS JURY INSTRUCTIONS**



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## I. INTRODUCTION

Synopsys submits this brief in support of its proposed Jury Instruction No. 17 regarding the "but for" test for lost profits. Synopsys' proposed instruction addresses three critical points: (1) under the first *Panduit* factor, Mentor must show that the accused features (flexible probes and/or value change probes) were what drove customers to buy the accused ZeBu products;[1] (2) under the second *Panduit* factor, Mentor must show that customers would have actually purchased additional Veloce products from Mentor rather than, for example, buy ZeBu without flexible or value change probes or choose not to buy emulators; and (3) Mentor's damages theory is that it would have sold more Veloce Quattro devices specifically. These points are all consistent with Federal Circuit precedent, this Court's prior rulings in this case, and Mentor's representations to the Court.

Synopsys also requests that the Court delete "Instruction No. 18 – Demand" because Synopsys' proposed Instruction No. 17 incorporates sufficient explanation regarding demand issues. Synopsys also proposes an addition to "Instruction No. 22 – Market Share" to account for Mentor's two-supplier market theory for Intel. Finally, Synopsys proposes an additional 30(b)(6) witness instruction. Synopsys' proposed Instructions are attached as Exhibit A.

## II. ARGUMENT

### A. Mentor Must Show that the Accused Features Drove Customers to Buy ZeBu

Synopsys seeks to include the following instruction for the first *Panduit* factor:

> (1) That the patented features were what drove customers to purchase the accused ZeBu devices. It is not enough to merely show that the '376 patented feature is viewed as valuable, important, or even essential to the use of the emulator.

The first line of Synopsys' proposed instruction (*i.e.*, "That the patented features were what drove customers to purchase the accused ZeBu devices") is taken directly from the Court's ruling

[1] This issue could be presented either under the first *Panduit* factor or the fourth.



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

at the September 26, 2014 pretrial conference, the Court's previous summary judgment rulings on this issue, and one of the elements Mentor represented it would have to prove at the pre-trial conference.

Before trial, the Court ruled that Mentor could prove the amount of any lost profits in one of two ways: "Mentor Graphics may recover its lost Veloce sales in their entirety only if it can show that the '376 patent is *the* basis for consumer demand; otherwise, demand must be apportioned among the '376 patent and those patents that have been dismissed." Ex. B (Court's 8/25/2014 Clarification Email) (emphasis in original); *see also* Ex. C (Dkt. 589) ("At trial, Mentor Graphics bears the burden of showing to what extent the remaining patent in issue, U.S. Patent No. 6,240,376, drove demand for Veloce emulators."). This decision was based on *Ferguson* and *Rite-Hite*. *See Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327 (Fed. Cir. 2003); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538 (Fed. Cir. 1995) (en banc). After this ruling, the Federal Circuit issued its opinion in *VirnetX*, confirming the correctness of the Court's order. *VirnetX, Inc. v. Cisco Sys., Inc.*, No. 2013-1489, 2014 U.S. App. LEXIS 17748, at *26-28 (Fed. Cir. Sept. 16, 2014).

At the pre-trial conference on September 26, 2014, Mentor represented that it would not advance an apportionment theory at trial. *See* Ex. D (9/26/2014 Pretrial Tr.) at 19:12-20. Mentor claimed that it would attempt to prove a "but for" causation theory which, according to Mentor, does not require apportionment. *Id.* The Court ruled that, to do so, Mentor must make the "showing that ***the patented features were what drove Intel to purchase Synopsys' products*** and [that] no other option was really pragmatically available to Intel if Synopsys' infringing products were taken off the table." *Id.* at 7:4-8 (emphasis added).[2] Synopsys' proposed construction incorporates the Court's summary judgment and pretrial conference rulings.

[2] Mentor's counsel also agreed at the previous pretrial conference that the patented features must be "important" and must have "strongly influenced sales." *See* Ex. E (9/23/14 Pre-trial Tr.) at 9:7 – 10:1.



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

The second sentence of Synopsys' proposed instruction (*i.e.*, "It is not enough to merely show that the '376 patented feature is viewed as valuable, important, or even essential to the use of the emulator") is directly from Federal Circuit case law. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012) ("It is not enough to merely show that the disc discrimination method is viewed as valuable, important, or even essential to the use of [the product].").[3] This additional language will help inform the jury what it means to "drive" demand, a concept that is not readily understandable on its own. This language is also consistent with the Court's earlier rulings on lost profits, *see* Ex. B (Court's 8/25/2014 Clarification Email) ("Mentor Graphics may recover its lost Veloce sales in their entirety only if it can show that the '376 patent is *the* basis for consumer demand") (emphasis in original).

**B. Mentor Must Show That Customers Would Have Actually Purchased Veloce if ZeBu Were Off the Market**

Synopsys seeks to add the following instruction for the second *Panduit* factor:

(2) That there were no acceptable non-infringing substitute products and that customers would purchase additional products from Mentor Graphics if ZeBu were not available.

This instruction mirrors the model instruction regarding "acceptable non-infringing substitute products," and it adds that "customers would purchase additional products from Mentor Graphics if ZeBu were not available." In addition to the possibility that a customer would buy Palladium or another substitute product, this instruction incorporates the concept that, if ZeBu were off the market, customers might have chosen not to purchase Mentor at all, to purchase ZeBu without flexible and value change probes, or to turn to another option, such as developing their own

[3] Although *LaserDynamics* case is a reasonable royalty case, its principles apply to damages computations for both lost profits and a reasonable royalty. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995); *Cornell Research Found., Inc. v. Hewlett-Packard Co.*, Civ. Action No. 5:01-cv-1974 (NAM/DEP), 2007 U.S. Dist. LEXIS 89637, at *198 (N.D.N.Y. Jan. 31, 2007) (Rader, J., sitting by designation from the Federal Circuit) ("The entire market value rule applies to both lost profits and damages calculated under a reasonable royalty theory.").



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

emulation solutions. *See* Ex. D (9/26/2014 Pre-trial Tr.) at 6:7-21 (Court acknowledging the "obstacle" that a customer would simply choose not to buy anything because Veloce is much more expensive). This is particularly important in this case because Mentor's theory is that customers such as Intel would have purchased Veloce even though Veloce costs ***2.6 times more*** than ZeBu. *See* Ex. F (10/2/2014 AM Trial Tr.) at 735:1-16.

### C. Mentor Claims it Would Have Sold More Veloce Quattro

Synopsys seeks to add the following phrase to the second paragraph of the new instruction:

> In other words, Mentor Graphics must show that, but for the infringement by Synopsys, there is a reasonable probability that Mentor Graphics would have earned higher profits ***by selling additional Veloce Quattro devices.***

This phrase matches the instruction to the facts of this case. Mentor's damages expert Stephen Degnan testified that his lost profits calculations were based on the assumption that Mentor would have sold its Veloce Quattro emulator, and only that emulator, if ZeBu were not on the market. *See* Ex. F (10/2/2014 AM Trial Tr.) at 686:1-22 ("[F]or each ZeBu Server, that each ZeBu Server would have -- the comparable unit that would have been sold by Mentor Graphics was a Quattro."); *id.* at 733:9-15 (testifying that he relied on Quattro sales for his lost profits theory "[b]ecause that's a comparable unit"). The jury has heard about numerous devices sold by Mentor. This instruction focuses on the device Mentor says it would have sold.

### D. Additional Changes to Lost Profits Instructions

Synopsys proposes making two additional changes to the lost profits instructions. The first is to delete Instruction No. 18 – Demand. This instruction currently reads that demand can be proven with significant sales of a ZeBu product or with a competing product. Given the explanation for the first *Panduit* factor above, such an additional instruction is inconsistent and unnecessary.



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

The second change is to Instruction 22 – Market Share to reflect Mentor's theory that Intel is a two-supplier market.

> In this case, Mentor Graphics seeks lost profits based on its market share. For every customer other than Intel, Mentor Graphics contends that the market included at least the following suppliers: Mentor Graphics, Synopsys, and Cadence.
>
> For Intel sales, Mentor Graphics contends that the market included only two suppliers: Mentor Graphics and Synopsys. Mentor Graphics contends that it is entitled to lost profits for 100% of the sales Synopsys made to Intel and not just lost profits based on its market share in the overall emulation market that it seeks for other customers. Synopsys disagrees and contends that the same market exists for all customers, including Intel.
>
> Mentor Graphics bears the burden to show that (a) the only competitors in the market for Intel's emulation purchases are Mentor Graphics and Synopsys, (b) Intel would not have purchased emulators from another supplier such as Cadence if Synopsys could not sell ZeBu products, (c) Intel would not have turned to alternatives other than emulation, (d) Intel would not buy a ZeBu product without flexible probes or value change probes, and (e) Intel was required to buy Veloce emulators rather than simply choosing not to buy any emulators. To prove that no alternatives exist, Mentor must show that Palladium (or another option) was not an alternative to Veloce or ZeBu because of disparately different prices or significantly different characteristics.

Again, this instruction accurately reflects Mentor's positions in this case, the Court's rulings, and the law on what is necessary to prove a two-supplier market. *See Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1124 (Fed. Cir. 2003) (holding that a two-supplier market "requires an analysis which excludes alternatives to the patented product with disparately different prices or significantly different characteristics") (citations omitted); *see also* Ex. D (9/26/14 Pretrial tr. at 6:17-21) (listing the items Mentor must prove to show that Intel was a two-supplier market).



**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

DATED: October 5, 2014

By: /s/*I. Neel Chatterjee*

**Stephen F. English**, OSB No. 730843
SEnglish@perkinscoie.com
**Julia E. Markley**, OSB No. 000791
JMarkley@perkinscoie.com
**PERKINS COIE LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209
Telephone: 503.727.2000
Facsimile: 503.727.2222

**I. Neel Chatterjee** (*pro hac vice*)
nchatterjee@orrick.com
**William H. Wright** (*pro hac vice*)
wwright@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1000 Marsh Road
Menlo Park, CA 94025
Telephone: 650.614.7400
Facsimile: 650.614.7401

Attorneys for Defendants and Counter-Claimants/Plaintiffs Synopsys, Inc.; Synopsys Emulation and Verification S.A.; and EVE-USA, Inc.