UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**MENTOR GRAPHICS CORPORATION**, an Oregon Corporation,

        Plaintiff/Counter-defendant,

        v.

**EVE-USA, INC.**, a Delaware corporation; and **SYNOPSYS EMULATION AND VERIFICATION S.A.**, formed under the laws of France,

        Defendants/Counter-claimants.

**EVE-USA, INC.**, a Delaware corporation; and **SYNOPSYS EMULATION AND VERIFICATION S.A.**, formed under the laws of France,

        Plaintiffs/Counter-defendants

        v.

**MENTOR GRAPHICS CORPORATION**, an Oregon corporation,

        Defendant/Counter-claimant.

Case No. 3:10-cv-954-MO (lead)
Case No. 3:12-cv-1500-MO
Case No. 3:13-cv-579-MO

OPINION AND ORDER

1 – OPINION AND ORDER

**MOSMAN, J.**,

On October 10, 2014, a jury entered a verdict finding that Defendants (collectively "Synopsys") were liable for direct and contributory infringement of Plaintiff's ("Mentor") patent. Verdict [722] at 1–3. The jury awarded Mentor $36,417,661 for lost profits from sales Mentor proved it would have made but for the infringement and 5% of $4,842,209 as a reasonable royalty for sales that Mentor failed to prove it would have made but for the infringement. *Id.* at 3. Since the entry of the jury verdict, Mentor filed a Motion for Accounting [783] and Synopsys filed a Motion for Judgment as a Matter of Law ("JMOL") [787] and a Motion for New Trial on Damages [790].

On March 3, 2015, an oral argument was held regarding these motions. This opinion and order will dispose of all the issues taken under advisement at the close of oral argument.

**I.      Motion for Accounting**

Mentor's Motion for Accounting [783] is DENIED. For the reasons stated on the record at oral argument, I order that a new trial be held to determine the amount of supplemental damages Mentor is entitled to receive. The two remaining sets of issues after oral argument were: (1) whether a jury trial would be necessary to determine the amount of supplemental damages Mentor is entitled to, and whether that trial would result in what I called a jury trial trap; and (2) whether Mentor would be able to seek pre-verdict supplemental damages at this new trial. For the following reasons, I do not believe this order will result in a jury trial trap, and I believe that Mentor has the right to seek pre-verdict supplemental damages.

> A.   *Jury Trial Issues*
>
> 1.   **The Right to a Jury Trial**

At oral argument and in its reply brief, Mentor argued that I had the discretion to decide how to determine the amount of supplemental damages Mentor was entitled to; a jury trial was not required. In addition, Mentor raised the issue of a potential jury trial trap if I were to order a new jury trial to determine the supplemental damages at issue. In other words, there would be a trap because using a jury trial would trigger a line of Federal Circuit opinions regarding res judicata that in this context would require me to dismiss the supplemental damages trial. I believe a jury trial is required to determine the amount of supplemental damages Mentor is entitled to, but I do not believe it is appropriate to determine the potential jury trial trap issue at this time.

At oral argument and in its briefing, Mentor argued that I was not required to hold a jury trial to determine supplemental damages. Mentor relied on *SynQor, Inc. v. Artesyn Technologies, Inc.*, in which the Federal Circuit held:

> [T]he amount of supplemental damages following a jury verdict is a matter committed to the sound discretion of the district court . . . . [A] jury right is not implicated every time the district court is required to determine factual matters before awarding supplemental damages to compensate the patentee for post-verdict infringement.

709 F.3d 1365, 1384 (Fed. Cir. 2013) (internal quotations omitted). I believe Mentor's reliance on this case is misplaced. The fact that the Federal Circuit said a jury right is not implicated *every time* when it could have said that a jury right is *never* implicated indicates there are circumstances where determining certain factual matters would trigger a jury right. I believe this to be such a case. In *Apple, Inc. v. Samsung Electronics Co., Ltd.*, the district court held it could award supplemental lost profits damages, but not royalty damages, without triggering a jury trial

3 – OPINION AND ORDER

right. 926 F. Supp. 2d 1100, 1106 (N.D. Cal 2013). With respect to supplemental lost profits damages, the court held, "Because the jury returned an award for each product separately, the Court can simply divide the jury award for each product by that product's number of sales to calculate [the lost profits] per-product amount." *Id.* With respect to supplemental royalty damages, the court held, "Here, the jury did not make a finding as to the appropriate royalty rate, and the Court cannot now do so without treading on Samsung's Seventh Amendment right to a jury trial on that issue." *Id.* In other words, where an award for supplemental damages would require the district court to engage in additional fact-finding of essential facts to the proffered damages theory, a jury right is triggered. In *Apple*, the court was able to award lost profits because no additional fact-finding was required. The district court was able to take the per-product lost profits amount found by the jury and apply it to any undisputed sales not considered by the jury. However, the district court could not award supplemental royalty damages because that would have required the district court to determine the appropriate royalty rate, i.e. an essential fact to a royalty award not determined by the jury.

In our case, in order to extrapolate an award of supplemental lost profits from the jury award I would need to find that the Intel two-supplier market continued after December 31, 2013. An Intel two-supplier market is an essential fact to Mentor's damages theory, but the jury was not required to determine, nor given any evidence to determine, whether the two-supplier market continued after December 31, 2013. Synopsys argues that sometime in 2014, Intel acquired a small tech company called Avago, which had a Palladium emulator. Defs.' Response in Opposition [808] at 3–4. Synopsys argues that it can prove that the Palladium met Intel's needs and that historical precedent would show that once an emulation provider has a foothold within a company, such as the Palladium emulator in this case, it is likely to grow its presence.

4 – OPINION AND ORDER

*Id.* This would undermine an essential factual basis of the jury award—i.e. a two-supplier Intel market. Based on the principal found in *Apple*, this alleged factual change triggers a jury trial right.

### 2. Jury Trial Trap

Mentor argues that if I grant Synopsys's request for a jury trial to determine supplemental damages, Synopsys will then argue that a line of Federal Circuit cases bars the trial I have just ordered—this is what I called the jury trial trap at oral argument. Pl.'s Reply [816] at 8. Although I expressed some tentative views on this issue at oral argument, I do not believe this issue is ripe. Mentor may be correct that Synopsys will raise this argument when Mentor moves for a trial on supplemental damages, but because Mentor is yet to move for a trial and because Synopsys has not yet made this argument, it is too early for me rule on this issue. Whether or not there is a jury trial trap does nothing to change the fact that Synopsys's Seventh Amendment rights require that there be a trial. I leave it to a later summary judgment motion to decide whether or not a jury trial is barred by res judicata.

### B.    *Pre-Verdict Supplemental Damages*

District courts have the authority to award supplemental damages based on pre-verdict infringement not considered by the jury. *See Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.*, 833 F. Supp. 2d 333, 351 (E.D. N.Y. 2011) (awarding supplemental damages for pre-verdict infringement not considered by jury); *ActiveVideo Networks, Inc. v. Verizon Commc'ns., Inc.*, No. 10 Civ. 248, 2011 WL 4899922, at *4 (E.D. Va. Oct. 14, 2011) (awarding supplemental damages for the approximate five month period predating the trial and jury verdict); *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 609 F.Supp.2d 951, 959–60, 987 (N.D. Cal. 2009) (awarding pre-verdict supplemental damages after "the last date for which [the patentee] was

able to present evidence of [infringing] sales to the jury"); *Itron, Inc. v. Benghiat*, No. CIV.99-501 (JRT/FLN), 2003 WL 22037710, at *15–16 (D. Minn. Aug. 29, 2003) (awarding damages for pre-verdict period of infringement for which infringer provided no sales data); *Mikohn Gaming v. Acres Gaming, Inc.*, No. CV-S-97-1383-EJW, 2001 WL 34778689, at *19 (D. Nev. Aug. 2, 2001) (awarding supplemental damages that include pre-verdict infringing sales not contained in the damages experts' reports nor presented to the jury). However, Synopsys correctly cites *Oscar Mayer Food Corporation v. Conagra, Inc.* for the proposition that "[if] it is not clear whether the jury awarded damages for the period of time up to and including the date of trial," the "awarding [of] additional amounts for damages" would improperly invade "the jury's province to determine actual damages." 869 F. Supp. 656, 668 (W.D. Wis. 1994). Synopsys argued that it is not clear whether the jury awarded damages for the pre-verdict period starting with the close of discovery and running up to when the verdict was entered because: (1) the verdict form and instructions did not contain a damages cutoff date; and (2) a jury question submitted just prior to the jury entering a verdict. I do not find these arguments to be sufficiently persuasive to justify barring Mentor from seeking pre-verdict supplemental damages.

In *Telecordia Technologies, Inc. v. Cisco Systems, Inc.*, the Federal Circuit held that "[d]istrict courts have broad discretion to interpret an ambiguous verdict form, because district courts witness and participate directly in the jury trial process. The district court was in a position to assess whether the verdict figure represented past infringement as well as ongoing infringement." 612 F.3d 1365, 1378 (Fed. Cir. 2010). Although the verdict form and jury instructions did not contain an explicit damages cutoff date, based on the evidence presented at trial, I believe the jury did not consider or award damages for the period of time between the close of discovery (December 31, 2013) and the entry of the verdict (October 10, 2014). First, as

Mentor points out in its briefing, both sides' experts limited their damages calculations to sales and market conditions up to and including December 31, 2013. Neither expert included models or a proposed methodology for how those calculations could be projected into the future. Second, I do not view the jury note as strong evidence that the jury awarded damages for any period of time after December 31, 2013. The jury question stated, "Where in the binders can we find Eve sales to Intel from 2006 to present." Jury Question [724]. Although the question asks for data up to the "present," this could simply have been imprecise language from the jury. It is not unreasonable to think that when the jury asked for data up to the present, it meant up until 2013—the cutoff for the relevant time period it heard about at trial. What is more telling, is that the jury only asked for sales data from Eve to Intel, and not Eve to all customers. If the jury had intended to award damages for the period of time after December 31, 2013 through the verdict, it should have been asking for all Eve sales data regardless of the customer. Just as the jury had not received any sales data for Eve to Intel post-2013—which it apparently looked for and could not find—it had not received any sales data of Eve to other companies, and therefore would not have been able to find all the necessary Eve sales data had it tried to award damages for that period. Although the verdict form and jury instructions could have been clearer, based on the evidence presented at trial, it is clear that the jury did not award damages for any period of time after December 31, 2013. Mentor is therefore entitled to seek pre-verdict supplemental damages.

## II.     Motion for Judgment as a Matter of Law

Synopsys's Motion for JMOL [787] is GRANTED in part and DENIED in part. For the reasons stated on the record, I reject Synopsys's arguments that: (1) Mentor failed to prove direct infringement; (2) Mentor failed to apportion its damages; (3) Mentor failed to prove that the relevant market was inelastic; (4) Mentor failed to prove Intel was in a two-supplier market; and

(5) Mentor failed to properly support its reasonable royalty arguments. The two remaining issues after oral argument were: (1) whether Mentor in fact made a prima facie case of contributory infringement; and (2) whether Mentor's use of the Veloce Quattro in its damages calculation was proper. For the following reasons, I do not believe Mentor established a prima facie case of contributory infringement, but I do believe it was proper for Mentor to use the Veloce Quattro in its damages calculations. Synopsys's JMOL motion is therefore granted with respect to its contributory infringement arguments, but denied in all other regards.

    **A.**    *Contributory Infringement*

In order to establish a claim for contributory infringement, a plaintiff must show that the accused material or apparatus used in the patented process lacks a substantial non-infringing use. *In Re Bill of Lading Transmission*, 681 F.3d 1323, 1337 (Fed. Cir. 2012) (internal quotation marks and citations omitted). "For purposes of contributory infringement, the inquiry focuses on whether the accused products can be used for purposes *other than* infringement." *Id.* at 1338 (emphasis in original). "Where the product is equally capable of, and interchangeably capable of both infringing and substantial non-infringing uses, a claim for contributory infringement does not lie." *Id.* Based on the evidence presented at trial, in the briefing, and at oral argument, I agree with Synopsys that Mentor failed to prove that flexible and value change probes lacked a substantial non-infringing use. In its response, Mentor states, "[We] made [our] prima facie case by demonstrating that the flexible and value change probes practice the '376 Patent." Pl.'s Response in Opposition [809] at 21. Merely showing infringement, however, is not sufficient to establish a claim for contributory infringement; Mentor also had to show that flexible and value change probes lacked any substantial non-infringing use. Mentor has failed to point to any evidence in the record presented at trial from which the jury could reasonably have concluded

that flexible and value change probes lacked a substantial non-infringing use. I therefore grant Synopsys Motion for JMOL with regards to Mentor's contributory infringement claim.

### B. *Use of the Veloce Quattro in Damages Calculation*

Synopsys argued that Mentor's use of the Veloce Quattro in its damages presentation fatally flawed its damages theory because the evidence showed the Veloce Quattro was not suitable for Intel. Synopsys argues that because Mentor failed to prove it had a product Intel would have actually bought had ZeBu been pulled off the shelf, Mentor failed to prove that but for Synopsys's infringement of the '376 Patent it would have made any additional profits.

Synopsys's argument that there was extensive evidence that the Intel processor group would not buy the Veloce Quattro in place of the ZeBu has no basis. Defs.' Reply [819] at 28–29. The fact that the Intel processor group had not purchased the Veloce Quattro in the past, when purchasing an infringing ZeBu was an option, tells us little about what it would have done had ZeBu been pulled from the market. The jury heard several pieces of evidence that would have allowed it to determine what the Intel processor group would have done had ZeBu been pulled from the shelves. First, the jury heard testimony that at least some Intel groups had purchased Veloce Quattro emulators in the past. *See, e.g.,* Pl.'s Response [809] at Ex. C; Trial Ex. 458 at lines 866, 931, 975, and 978; Trial Tr. [737] at 691:4–6. Second, Synopsys's only argument for why the Veloce Quattro was an unacceptable alternative to ZeBu for Intel's processor group was that it lacked sufficient capacity—not speed, price, performance or foot print. However, the jury heard testimony from Dr. Degnan that it was possible to connect several emulators together to create increased capacity, and that many consumers in the emulator market were doing just that. Trial Tr. [737] at 733:18–22. Although Synopsys attacked the reliability of that testimony, it never objected to Dr. Degnan presenting it to the jury. Therefore, on the

evidence the jury received, it could have reasonably concluded that even if at all times a single Veloce Quattro had insufficient capacity to meet Intel's needs, but for Synopsys's infringement Intel would have bought multiple Veloce Quattro emulators and simply connected them together to overcome their capacity shortcomings. Nothing about Mentor's use of the Veloce Quattro in its damages calculation fatally flaws the jury award.

## III.    Motion for New Trial on Damages

Synopsys's Motion for New Trial on Damages [790] is DENIED. For the reasons stated on the record, I reject Synopsys's arguments that: (1) Synopsys was prejudiced by a last minute change in the jury instructions; (2) the lost profits and two-supplier market instructions were clearly erroneous; and (3) the jury verdict awards Mentor double recovery. The only open issue after oral argument was whether or not *Ericsson, Inc. v. D-Link Systems, Inc.* would demonstrate that the lost profits instructions were clearly erroneous. 773 F.3d 1201 (Fed. Cir. 2014). It did not.

Synopsys argues that I should focus on the portion of *Ericsson* that merely recites the default rule that a patent owner who proves infringement is only entitled to receive damages based on the value of the patent feature—no value from non-patented features should be added. However, as both sides are well aware, there is an exception to this rule. In *State Industries, Inc. v. Mor-Flo Industries, Inc.*, the Federal Circuit held, "the entire market value rule . . . permits recovery of damages based on the value of the entire apparatus containing several features, where the patent related feature is the basis for consumer demand." 883 F.2d 1573, 1580 (Fed. Cir. 1989). The court went on to cite *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.* for the proposition that the entire market value rule is properly applied when the nonpatented devices cannot be sold without the patented features. *Id.* (citing 761 F.2d 649, 656 (Fed. Cir.

1985) ("The ultimate determining factor is whether the patentee or its licensee can normally anticipate the sale of the unpatented components together with the patented components")). This case fits within the rule stated in *State Industries* and *Kori Corp*. There was no evidence at trial that consumers could, or ever did, purchase the unpatented features separate from the patented features. Consumers were presented with an emulator and they either bought it or they did not. There was no ability to separate the patented feature from the unpatented features and purchase some but not all of the features. Because Mentor proved at trial that it could normally anticipate the sale of the unpatented components together with the patented components, the lost profits instruction in this case did not offend or contradict the entire market value rule. The *Ericsson* recitation of the default rule does nothing to change that conclusion.

## CONCLUSION

For the reasons stated above, Mentor's Motion for Accounting [783] is DENIED. Synopsys's Motion for JMOL [787] is GRANTED with respect to Mentor's contributory infringement claim and DENIED in all other respects. Synopsys's Motion for New Trial on Damages [790] is DENIED.

IT IS SO ORDERED.

DATED this   11th   day of March, 2015.

                                       /s/ Michael W. Mosman
                                       MICHAEL W. MOSMAN
                                       United States District Judge