# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **MENTOR GRAPHICS CORPORATION**, an Oregon corporation,<br><br>    **Plaintiff and Counter-Defendant**,<br><br>    v.<br><br>**EVE-USA, INC.**, a Delaware corporation, and **SYNOPSYS EMULATION AND VERIFICATION S.A.**, formed under the laws of France,<br><br>    **Defendants and Counter-Plaintiffs**. | Civil Action No. 3:10-CV-954-MO (LEAD)<br>Civil Action No. 3:12-CV-1500-MO<br>Civil Action No. 3:13-CV-579-MO<br><br>**PERMANENT INJUNCTION FACTUAL BASIS** |
| **SYNOPSYS, INC.,** a Delaware corporation**, EVE-USA, INC.,** a Delaware corporation**,** and **SYNOPSYS EMULATION AND VERIFICATION S.A.,** formed under the laws of France,<br><br>    **Plaintiffs and Counter-Defendants**,<br><br>    v.<br><br>**MENTOR GRAPHICS CORPORATION,** an Oregon corporation,<br><br>    **Defendant and Counter-Plaintiff**. | |

1 – PERMANENT INJUNCTION

On March 11, 2015, this court issued an order granting Plaintiff's ("Mentor") Motion for a Permanent Injunction [758]. On March 13, 2015, Defendants (collectively "Synopsys") filed a Motion for Stay [845]. Synopsys argued that the order granting the injunction was fatally flawed under FRCP 65 because the order failed to state the reasons why it issued. For the following reasons, I issued the order granting a modified version of Mentor's proposed injunction.

### I.    Irreparable Harm

Mentor successfully argued that absent an injunction it was likely to suffer irreparable harm by showing: (1) the emulation market is a "design wins" market; and (2) it likely had and will continue to suffer harm from price erosion caused by Synopsys's infringement.

#### A.    *Design Wins Market*

The Federal Circuit has held that "exclusion from a fair opportunity to compete for design wins constitutes irreparable harm." *Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1337 (2013). The irreparable harm comes from the fact that the patentee is prevented from making future sales during the lifecycle of the design, and from the fact that the patentee is not able to compete on a level playing field for future sales due to the approval efficiencies and goodwill gained from the first infringing sale.

Mentor successfully proved at trial that the emulation market is a design wins market. Mr. Cantow and Ms. Stuckwisch testified about the product "stickiness" in the emulator market. Mr. Gandhi, Synopsys's 30(b)(6) witness from Intel, stated that, "it is not easy to displace competition" and, "[the] investment which customers make over the years makes those products much more, you know – harder to replace." Gandhi Dep. Tr. at 49, 52. Even Synopsys, in its Response to Mentor's Motion for Accounting [808], stated, "once an emulation provider has a foothold within a company, it is likely to grow its presence." Defs.' Response [808] at 4. These

are all market characteristics that suggest the emulation market is a design wins market. By infringing on Mentor's patent, Synopsys excluded Mentor from a fair opportunity to compete for design wins, resulting in irreparable harm.

### B. *Price Erosion*

Absent Synopsys in the two-supplier Intel market, Mentor would be a monopoly supplier to Intel. With Cadence waiting in the wings, there is certainly a ceiling on the higher prices that Mentor could charge Intel, but basic economics says that Mentor could and would charge higher prices. Given the difficulty and uncertainty in calculating what that higher price would be, and how many emulators Intel would buy at that price point, this is the type of hard to quantify harm that constitutes irreparable harm and justifies a permanent injunction.

Synopsys argues that any reduction in Mentor's prices during the infringing period was due to volume discounts that Mentor voluntarily gave, or because of Intel's focus on price. This may or may not be true, but it ignores the impact the presence of Synopsys in the emulator market had on these two price reducing factors. Perhaps, absent Synopsys, Mentor would not have to offer volume discounts to close orders with Intel. Although focused on price, perhaps Intel would lack sufficient bargaining power to get Mentor to lower its prices. I do not find these arguments sufficiently persuasive to lead to a conclusion that any price erosion Mentor suffered was a self-inflicted wound.

## II.    No Adequate Remedy at Law

Mentor successfully argued there is no adequate remedy at law because its injuries are largely unquantifiable. For example, Mentor argued the injuries arising from an inability to fairly compete in a design wins market are hard to quantify. I agree that it would be hard, if not impossible, to calculate how many sales would result from the incumbency effect or how prices would be affected by the incumbency effect. With regard to price erosion, it would also be hard

3 – PERMANENT INJUNCTION

to prove exactly how much of a drop in price is caused by the infringement, and what portion is caused by other independent factors. Mentor also argued that its brand recognition is hurt when Synopsys products, because they both contain the same patented technologies, increasingly look like Mentor's products. Placing a dollar amount on that harm is hard, if not impossible. Finally, Mentor argued that its reputation as an inventor is hurt when all of its supposedly innovative improvements are found in competing products, again a harm that is hard to prove.

Synopsys's only counter-argument is that if Mentor was able to prove its damages at trial, it should also be able to do so now. Synopsys's position assumes, however, that the jury verdict fully compensated Mentor for all of the harms it suffered over the course of Synopsys's infringement. This may not be an accurate assumption. At best, it can be said that the jury verdict fully compensated Mentor for all of the injuries that it could prove it suffered as a result of Synopsys's infringement. It is possible that Mentor suffered additional unquantifiable injuries that it did not seek compensation for at trial because it knew that it could not prove them. The fact that Mentor was able to prove and recover *some* damages at trial should not now preclude it from protecting itself from hard to prove future harms.

### III.     Balance of Hardships

The balance of hardships weighs in favor of a permanent injunction. On one side of the scale is the irreparable and hard to quantify harm to Mentor discussed above. On the other is the harm suffered by Synopsys's customers who purchased infringing ZeBu emulators after the verdict was entered and the harm to Synopsys from having to give extraterritorial notice of the infringement.

I believe that I should give little to no weight to the harm arising out of post-verdict sales. There is no justification for these sales. Synopsys knew its ZeBu emulator had been found to infringe the '376 patent, and should have ceased selling that emulator. Harm arising out of

Synopsys's willful illegal behavior post-verdict cannot justify denying an injunction, especially given the uncertainty in this case regarding Mentor's ability to recover supplemental damages.

With regards to the notice provision, Mentor showed at trial that Intel was able to set up ZeBu emulators in Israel, but still operate those emulators from within the United States. Given this ability for remote use, Synopsys could easily circumvent the injunction by selling emulators to foreign third parties and having those third parties contract with Synopsys customers within the United States to grant them access to the ZeBu emulators sold and installed abroad. Although Synopsys argues that these types of notice provisions are normally disfavored in the law, I believe it is appropriate here given the ability to easily access and utilize emulators remotely. Whatever competitive harm Synopsys will suffer as a result of this notice provision is outweighed by the harm Mentor would suffer is Synopsys were allowed to simply sell and install emulators abroad for remote use by third parties within the United States.

Given the reasons stated above, the balance of hardships weighs in favor of granting Mentors request for a permanent injunction.

## IV.    Public Interest

With regard to the public interest, Mentor successfully argued that the public interest weighs in favor of an injunction. Mentor made all of the classic arguments in favor of having and enforcing patent rights. Mentor argued the public benefits from innovation, and patents encourage innovation by allowing the innovator to capture all the economic gains from its research and development efforts. Synopsys's counter-arguments were: (1) the patented feature is really not that important; (2) taking these emulators off the market for such a small flaw would lead to higher prices in the market for emulators, and that hurts the public; (3) the public is hurt when the number of products it has to choose from in the market place is decreased; and (4) the cost of enforcing the injunction will be a waste of resources. All of these arguments are either

rejected by the jury verdict, or are wholly irrelevant because they are not really arguments against this injunction, but rather arguments against having any type of patent system at all.

## CONCLUSION

For the foregoing reasons, I granted Mentor's Motion for Permanent Injunction [758].

IT IS SO ORDERED.

DATED this  17th   day of March, 2015.

                                     /s/Michael W. Mosman
                                     MICHAEL W. MOSMAN
                                     United States District Judge